Russell & Co., Suçcrs., S. en C., Plaintiff and Appellant, v. Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellee.

No. 6744.   Argued November 20, 1934.—Decided February 8, 1935.

R. Castro Fernández and José López Baralt for appellant.   Benjamin J. Horton, Attorney General, and R. Cordovés Arana, Assistant Attorney General, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Russell & Co., Succrs., S. en C., a partnership domiciled in Ensenada, P. R., organized in accordance with the laws of this Island, requested, on January 20, 1934, that the District Court of San Juan issue an injunction against the

Treasurer of Puerto Rico ordering him to refrain from collecting certain irrigation charges levied on certain properties of the plaintiff, by means of summary attachment or any other proceeding except the ordinary action to collect taxes, charges or imposts, and from selling said parcels at public auction. It also requested the issuance of a preliminary injunction and asked that a restraining order issue immediately against the Treasurer.

On the same day, January 20, the court issued the restraining order and ordered the Treasurer to appear and show cause why the preliminary injunction requested should not issue. The Treasurer appeared and set up certain grounds why the complaint should be dismissed and the restraining order set aside. The court heard both parties and decided the case against the plaintiff. The latter moved for a reconsideration, which was denied on July 16 last, whereupon he appealed to this court.

The facts on which the complaint is based are, in brief, that the plaintiff is the owner of five parcels of land located in the municipality of Juana Díaz, which the Treasurer of Puerto Rico appraised in accordance with Act No. 49 of July 8, 1921 (Session Laws, p. 366), levying a certain irrigation tax on each parcel for the fiscal years 1930–1931, 1931–32, 1932–33, and the first semester of 1934, and that on January 12, 1934, the Treasurer, through his agent the Collector of Internal Revenue of Juana Díaz, attached the five parcels for the collection of the following sums:

| Parcel | Tax | Surcharges | Costs | Total |
|--------|-----|-----------|-------|-------|
| 295 | $1,588.99 | $186.62 | $2.50 | $1,778.11 |
| 309 | 4,081.55 | 326.71 | 2.50 | 4,410.76 |
| 413 | 1,623.29 | 190.67 | 2.50 | 1 816.46 |
| 379 | 2,701.72 | 317.31 | 2.50 | 3,021.53 |
| 403 | 8,068.11 | 918.06 | 2.50 | 8,988.67 |

It is further alleged in the complaint that the attachment levied is illegal and void for the following reasons:

"*a*. Because Act No. 49 of 1921 does not authorize the defendant Treasurer to attach summarily for the collection of the charges or imposts for irrigation which said act provides.

"*b*. Because the Treasurer of Puerto Rico lacks inherent power to collect charges or imposts for irrigation by means of the summary attachment provided for in sections 335 and 336 of the Political Code.

"*c*. Because, although Act No. 49 of 1921 calls the said charges or imposts for irrigation 'taxes,' such charges or imposts are not taxes in the legal sense of the term.

"*d*. Because the tax, charge, or impost for irrigation which is provided by Act No. 49 of 1921 is illegal, unconstitutional and void because it impairs the contractual rights of the plaintiff and delegates legislative powers to the Commissioner of the Interior, as was decided by the Circuit Court at Boston in considering the constitutionality of the said Act No. 49 of 1921 in the case of the *People of Puerto Rico* v. *Havemeyer et al.*, 60 F. (2d) 10, in which the People of Puerto Rico attempted to collect from this plaintiff the charges or imposts for irrigation on the parcels described in this complaint for the fiscal years 1922–23 to 1929–30, inclusive.

"7. That the attached parcels are very necessary and indispensable in the business of the plaintiff, that each one of them has a value far greater than the total of the charges of imposts for irrigation which the defendant Treasurer is attempting to collect by means of the alleged illegal attachment, and the sale of the same at public auction will cause serious and irreparable damage and injury to the plaintiff.

"8. That the plaintiff has no adequate remedy at law and if this Hon. Court does not prevent, by means of an injunction, the collection by summary action of the said charges or imposts for irrigation and permits the defendant Treasurer to sell the attached parcels at public auction, as he has threatened to do and will do if this Hon. Court does not prevent it, the plaintiff will be deprived of its property without due process.

"9. That even supposing that Act No. 49 of 1921 were constitutional and valid, in the absence of express authority in the said act to collect the said charges or imposts for irrigation, the defendant Treasurer can collect them only in an ordinary action."

The appellant in its brief assigns six errors, and says:

"Before beginning the discussion of the errors assigned we wish to state that we agree with the conclusion reached by the Lower Court in its opinion, to wit:

"That the collection of a tax, even if it is illegal, cannot be prevented by means of an injunction if there is a clear, adequate, and effective remedy at law, *Matthews* v. *Rodgers*, 76 L. Ed. 347, cited in the opinion (Record p. 15), but we maintain that we are not trying to prevent the collection of a tax by means of the injunction requested, but to prevent the Treasurer of Puerto Rico from using the summary attachment proceeding for the collection of charges or imposts for irrigation, for two reasons:

"1. Because said charges or imposts for irrigation are not taxes, and

"2. Because the Treasurer of Puerto Rico is not authorized by law to collect the said charges or imposts for irrigation by means of the summary attachment proceeding."

The above simplifies the study and decision of the appeal, but before proceeding to do it, it seems expedient to refer to the case of *People of Puerto Rico* v. *Havemeyer et al.*, 60 F. (2d) 10, which, as we have seen, is invoked as one of the grounds of the complaint.

That case was brought in the District Court of San Juan and the members of the defendant partnership, Russell & Co., Sucrs., *S. en C.*, the plaintiff herein, to wit: Horace Havemeyer, Frank A. Dillingham, Edward S. Paine, Edwin L. Arnold, Frank M. Welty, and H. B. Orde, obtained the removal of the case to the Federal Court on the ground of diversity of citizenship. In the Federal Court the People insisted that the case be remanded to the Insular Court. The Federal Court refused and decided the case on its merits against the People of Puerto Rico. The latter appealed to the Circuit Court of Appeals for the First Circuit, which affirmed the judgment appealed from. The syllabus of the opinion delivered by the Circuit Court of Appeals is as follows:

"Federal court's jurisdiction of suit against partnership is determined by its members' citizenship, though it is entity, which may be sued in partnership name, under law of its domicile.

"Act levying special tax on lands, supplied with water from public irrigation system, *held* void as impairing obligation of contract to deliver water therefrom as equivalent in value of owners' old water rights (Organic Act Porto Rico section 2 (48 USCA section 737); Public Irrigation Law of Porto Rico 1908 as amended; Laws of Porto Rico 1921, No. 49, section 1).

"Act requiring treasurer of Porto Rico to take estimate of Commissioner of Interior in ascertaining rate of special tax on publicly irrigated lands *held* void as delegating legislative power to commissioner (Laws of Porto Rico 1921, No. 49, sections 1, 2; Public Irrigation Law of Porto Rico 1908, as amended)." 60 F (2d) 10.

Thereupon the People resorted to the Supreme Court of the United States and obtained a writ of certiorari, as a result of which the Court, on March 13, 1933 (288 U. S. 476), reversed the judgment and ordered that the case be returned to the Federal Court to be remanded to the Insular Court.

The syllabus of the opinion of the Supreme Court is as follows:

"A *sociedad en comandita* under the laws of Puerto Rico is not a limited partnership in the common-law sense, but is a juridical person with a personality like that of a corporation. P. 478.

"A suit against a *sociedad en comandita* of Puerto Rico can not be removed by its members from the Insular Court of the United States District Court for Puerto Rico, under sections 41 and 42 of the Organic Act, upon the ground that the members are not citizens of or domiciled in Puerto Rico. P. 482.

"A suit by the People of Puerto Rico to recover insular taxes is not to be classed as a suit arising under the laws of the United States, within the meaning of the jurisdictional statutes governing removal of causes, either (*a*) because authority to bring it comes from an Act of Congress, or (*b*) because the plaintiff is recognized as a political entity by the Act of Congress under which its government is organized. Pp. 482, 484.

"The doctrine that a suit by a corporation organized under an Act of Congress is within the jurisdiction of the federal courts as a suit arising under the laws of the United States, has been limited by precedent and by Acts of Congress, and is not to be extended. P. 485.

"60 F. (2d) 10, reversed."

As may be seen, the decision of the Supreme Court only covers the question of removal involved in the case. As it was fundamental and jurisdictional, it caused the collapse of the entire structure raised by the Federal District and Circuit Courts on the merits of the case, and as a result their pronouncements as to the unconstitutionality of Act No. 49 of 1921, on which the Treasurer relies for the collection of the charges or taxes herein involved, were shorn of decisive weight and retain only such persuasive force as their reasoning may carry.

This point being clear, let us proceed to the study and decision of the question really involved in this appeal, to wit: Does the injunction prayed for lie?

Everything depends upon whether the amounts which the Treasurer seeks to collect are or may be actually considered as taxes, because if they are or may be considered as such, then the act relating to the payment of taxes under protest provides the plaintiff with the proper proceeding to be followed to assert the rights it claims and the injunction requested was properly refused.

In deciding the question, the district court says in the opinion it delivered in support of its judgment:

"Opposing the claims of the plaintiff, we have section 678 of the Code of Civil Procedure (1933 ed.), which in its pertinent part reads as follows:

" 'Section 678.—An injunction cannot be granted:

" '1. . . . . . . . . . .

" '2. . . . . . . . . . .

" '3. . . . . . . . . . .

" '4. . . . . . . . . . .

" '5. . . . . . . . . . .

" '6. . . . . . . . . . .

" '7. To prevent the levying or collection of any tax levied by the laws of the United States or of Puerto Rico.'

"The question to be decided in this case is whether, notwithstanding the definite provisions of section 678, *supra*, the court may issue the injunction sought in this case.

"The cases uniformly agree that the courts do not favor the issuance of injunctions to prevent the collection of taxes levied by the State. The rule is imperative in the face of the danger to the state of not being able to meet its obligations as such if liberality in the granting of this remedy should prevent it from collecting its taxes. In order for an injunction to issue it is necessary that the right of the petitioner be extremely clear. The rule generally established is that in spite of the unconstitutionality or illegality of the statute levying the tax, the courts will not intervene by injunction to prevent the collection of the same as long as the party taxed has an adequate remedy at law, and unless there are special circumstances showing that the plaintiff's case comes under some recognized head of equity jurisdiction, such as irreparable damage, multiplicity of actions, etc.

"In dealing with this question the Supreme Court of the United States has said:

" 'Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved, Jud. Code sec. 237, or to his suit at law in the federal courts if the essential elements of federal jurisdiction are present. (Citations.)' *Matthews* v. *Rodgers,* 76 (U. S.) L. ed. 447, 452.

"In the case of *Long* v. *Norman,* Judge Bingham, speaking for the Circuit Court of Appeals, First Circuit, said:

" 'The collection of taxes under state authority will not be enjoined by a court of the United States on the sole ground that the tax is illegal, but it must appear that the party taxed has no adequate remedy by the ordinary processes of the law, and that there are special circumstances bringing the case within some recognized head of equity jurisdiction.' *Long* v. *Norman et al.,* 289 F. 5.

"In the case of *Long* v. *Norman,* Judge Bingham analyzes the Massachusetts statute relative to payments under protest, which is substantially the same as ours, and holds that the remedy is adequate.

"It has been held that a statute which permits the party taxed to recover the amount which he has paid under protest for an illegal tax, offers an adequate remedy in the ordinary processes of the law. See *Long* v. *Norman,* supra; 61 C. J. 1085; *Camuñas* v. *New York & P. R. Steamship Co.,* 260 F. 40.

"It has been further held that the fact that a property is sold at public auction for the payment of delinquent taxes does not in itself cause irreparable damage to the taxpayer, even where said parcel is necessary and indispensable for the continuation of his business. 32 C. J. 156.

"No other special circumstances bringing the case within some recognized head of equity jurisdiction is alleged in the complaint, but it is alleged that the said tax for the collection of which the Treasurer has attached the said parcel which he seeks to sell at public auction, is not a tax in the legal sense of the term, and that therefore the party taxed will not have the right to recover it if he pays it under protest, for, as the plaintiff alleges, the payment of a tax is not involved, and hence the prejudiced party cannot resort to the statutory right to recover taxes paid under protest.

"The tax which has given rise to this suit was imposed by Act No. 49 of July 8, 1921, which is entitled:

"  'An Act fixing a tax on certain lands using water from the southern coast public irrigation system, on which lands no tax whatsoever was levied under the Public Irrigation Law, and for other purposes.'

"Section 1 of the said act reads as follows:

"  'That a special tax is hereby levied in addition to other taxes already fixed by law, on all parcels of land which for irrigation purposes are supplied with water from the southern coast public irrigation systems constructed and in operation pursuant to the provisions of the Public Irrigation Law and amendments thereto, but which under the present Irrigation Law in no way contribute to the payment of expenses for the maintenance of said system.'

"The last paragraph of Section 2 of the act to which we are referring says:

"  'This tax shall be levied and collected by the Treasurer of Porto Rico at the same time as any other tax imposed by the Public Irrigation Law, and the moneys collected shall be covered into the Insular Treasury to the credit of a special trust fund known as the 'Irrigation Fund', to be invested in the same manner and for the same purposes provided by the Public Irrigation Law and laws amendatory thereof.'

"In the act cited above the lawmaker clearly expresses his intention to levy a tax similar to that levied by the Public Irrigation Law. Act No. 49 mentioned above merely extends the public irrigation

tax to other lands on which the said tax was not levied. For this reason it is called a special additional tax. It provides that it shall be levied and collected by the Treasurer of Puerto Rico, at the same time as any other tax imposed by the Public Irrigation Law, and that the moneys collected, just as the moneys collected under the Public Irrigation Law, shall be credited to a special fund called the 'Irrigation Fund.' These considerations lead us to the conclusion that the tax levied by Act No. 49 is of the same nature as that levied by the Public Irrigation Law, and the legislative provision that it be levied and collected at the same time as any other tax levied by the Public Irrigation Law clearly shows that, if the Treasurer, in order to collect the tax imposed by the Public Irrigation Law, must summarily attach property, then he must follow the same procedure in collecting this tax, since the lawmaker must have been aware of the fact that if the Treasurer had to follow the ordinary process of law, dilatory by nature, for the collection of this tax, while resorting to the summary action of the Political Code for the collection of the other, it would be quite impossible for the two taxes to be collected at the same time.

"It is not necessary to decide here whether the tax is illegal or unconstitutional, because, as we have already stated, the unconstitutionality or illegality of a tax does not in itself give the party taxed the right to have recourse to the extraordinary remedy of an injunction. If the statute is illegal or unconstitutional, the tax should be paid under protest and the unconstitutionality or illegality of the tax should be set up within the remedy granted by law to the taxpayer who pays his tax under protest."

Subsequently, in passing upon the motion for reconsideration presented by the plaintiff, the court expressed itself as follows:

"After examining our statement of the case and opinion which formed the basis of the judgment of April 11, 1934, we fail to see any legal ground to justify us in changing our viewpoint. We have no doubt that the additional tax created by Act No. 49 of 1921 is of the same nature as the tax established in the Public Irrigation Law, as it appears in section 11 of Act No. 128, approved August 8, 1913.

"Section 11 of Act No. 128 above cited states that the tax provided by the said act is imposed as a charge upon the lands (but not

as a personal liability upon the owners thereof) in favor of the People of Puerto Rico and shall constitute a lien superior and prior in law to any right, claim, or lien of any other nature, save and except the general taxes of Puerto Rico, and the same shall become due and the Treasurer of Puerto Rico shall proceed to the collection thereof, and to the attachment and sale of the land to enforce the collection thereof, in the manner and at the time heretofore or hereafter provided by law for the collection of any other taxes, etc.

"Section 1 of Act No. 49 of 1921, imposing the tax which is involved in this suit, in its pertinent part reads as follows:

" 'Section 1.—That a special tax is hereby levied in addition to other taxes already fixed by law, on all parcels of land which for irrigation purposes are supplied with water from the southern coast public irrigation system, etc.'

"And the last paragraph of section 2 of the same act says:

" 'This tax shall be levied and collected by the Treasurer of Porto Rico at the same time as any other tax imposed by the Public Irrigation Law, and the moneys collected shall be covered into the Insular Treasury to the credit of a special trust fund known as the 'Irrigation Fund,' to be invested in the same manner and for the same purposes provided by the Public Irrigation Law and laws amendatory thereof.'

"The paragraphs transcribed above clearly show that the intention of the lawmaker was to levy a tax of the same nature as that levied by the Public Irrigation Law and if, under the latter, the Treasurer has power to attach property and to sell it in the same manner used for the collection of general taxes, then he should have the same right under Act No. 49 of 1921, for, where the same reason exists, the same principle should be applied."

The appellant insists that it is not possible to include the charges for irrigation levied upon it within the essential concept of a true tax, and perhaps it is right, but, in our opinion, taking into consideration all the attendant circumstances, the facts, and the law, said charges may be considered as true taxes which may be and should be paid under protest if their return by judicial mandate is desired.

One of the authorities cited by the appellant itself embraces, in our opinion, the whole problem.

We transcribe the following from appellant's brief, changing only the italics:

"Judge Cooley cites the following opinion of the Supreme Court of Mississippi (*Macon* v. *Patty,* 57 Miss. 378), to clarify the difference between a tax and an assessment.

" 'A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the taxpayer; it is an assessment on the thing supposed to be benefited. A tax is levied upon the whole State or a known political subdivision as a country or town. A local assessment is levied upon property situated in a district created for the express purpose of the levy and possessing no other function or even existence than to be the thing upon which the levy is made. A tax is a continuing burden and must be collected at short intervals for all time and without it government cannot exist; a local assessment is exceptional both as to time and locality, it is brought into being for a particular occasion and to accomplish a particular purpose and dies with the passing of the occasion and accomplishment of the purpose. A tax is levied, collected and administered by a public agency, elected by and responsible to the community upon which it is imposed; a local assessment is made by an authority ab extra. Yet it is like a tax in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax in that it must be levied for a public purpose and must be apportioned by some reasonable rule among those upon whose property it is levied. It is unlike a tax in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must inure to the property upon which it is imposed.' Cited in Willoughby, Treatise on the Constitution, vol. 2, p. 1887.''

Really the appellant cannot complain, because it also considered the charges for previous years levied in the case of *People* v. *Havemeyer et al., supra,* which were of the same nature, as taxes, and they were considered to be such in the Federal District and Circuit Courts, which decided the case on its merits.

We feel that there is no ground for the fear of the appellant that if it should pay under protest, the People would

set up the defense that the special act covering this matter was not applicable, inasmuch as the People would have been stopped from so doing, for the People had already classified the charges as taxes, and had assessed and collected the same as such.

The judgment appealed from must be affirmed.